## MELBOURNE *v.* GRIFFITH

[No. 69, September Term, 1971.]

*Decided November 15, 1971.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*David A. McNamee*, with whom were *Samuel C. Steelman, Jr.*, and *Beatty & McNamee* on the brief, for appellant.

No brief filed on behalf of appellee.

SMITH, J., delivered the opinion of the Court.

Appellee, M. W. Griffith (Griffith), a real estate broker, believes appellant, P. G. Melbourne (Melbourne), another broker, is indebted to him for a portion of the commissions on the sale of some Prince George's County real estate. He convinced a jury of that fact and recovered judgment. We shall here reverse that judgment.

Melbourne filed a motion for summary judgment which was decided adversely to him by a judge other than the judge who sat at the trial of the case. He points out that under Maryland Rule 887 on an appeal from a final judgment "every interlocutory order which has previously been entered in the action shall be open to review by this Court unless an appeal has theretofore been taken from such interlocutory order and been decided on the merits by this Court." He urges, correctly in our view, that his motion for summary judgment should have been granted.

Griffith has proceeded on the theory that the criterion for determining whether or not there is a commission due between co-operating brokers is whether the co-operating broker has been of some assistance in the matter to the broker of record. Such is not the Maryland law. In *Bowie v. Martin*, 199 Md. 58, 61, 85 A. 2d 786 (1952), Judge (later Chief Judge) Markell stated the rule to be that such cases are "governed by the same legal principles as if [the broker] were owner instead of exclusive agent or broker." See also *Burrell v. Frisby,*

212 Md. 181, 186, 129 A. 2d 75 (1957). The rule as between broker and owner is as stated by Judge (later Chief Judge) Henderson for this Court in *Leimbach v. Nicholson*, 219 Md. 440, 149 A. 2d 411 (1959):

> "The broker must establish * * * that he is the primary, proximate and procuring cause, and it is not enough that he may have planted the seed from which the harvest was reaped." *Id.* at 446.

Griffith sued Melbourne alleging that Griffith was a duly licensed real estate broker in Maryland; that Melbourne was likewise so licensed; that Felix M. Irwin (Irwin) was a duly licensed real estate agent; that Melbourne as a broker during the years 1968 and 1969 was employed by the owner of certain lands in Prince George's County known as Hillsborough Subdivision of the Tenth Election District of Prince George's County; that Melbourne as such broker offered this land for sale on a cooperative basis with other brokers in the area, including Griffith; that Irwin was Griffith's agent; "that as a result of such offering by [Melbourne] the said Felix M. Irwin procured a purchaser, Robert Bornstein, a member of R-B Associates, Inc. and Colony Construction Corporation; that as a result of the efforts of the said Felix M. Irwin, Agent of [Griffith], a contract for the sale of certain portions of the said Hillsborough Subdivision was entered into"; that settlement was held; that the sale price was in the amount of $101,500; the commission provided in said contract was in the amount of $10,150; that Melbourne received his commission of $10,150; that the agreement between Melbourne and Griffith through his agent, Irwin, provided that each broker would receive 50% of the commission; that Melbourne refused and continues to refuse to pay over to Griffith or his agent any portion of the said commission "in violation of his agreement"; "that through the efforts and services of [Griffith] through his Agent, Felix M. Irwin, [Griffith] was the procuring cause of the sale to the said pur-

chaser of the said lands and as a result of [Melbourne's] refusal to share said commission as agreed, [Griffith] has been damaged." Griffith demanded judgment in the amount of $5,075.

It is conceded that the land in question was sold to R-B Associates, Inc., under a contract dated January 15, 1969, which contract did in fact call for a commission to Melbourne of 10% of the sale price of $101,500. Robert E. Bornstein executed the contract on behalf of the purchaser as its president. Melbourne took and filed Irwin's deposition. Irwin related that Melbourne advised him that "his group would very much like to dispose of" the land in question, that if Irwin "could find somebody that would be interested he'd very much appreciate it", and Melbourne "would co-op the sale of the lots with [Irwin]." Irwin called a Mr. Bud Ourand with Artery Enterprises. Ourand indicated that he did not think Artery would be interested but he knew someone else who was looking for lots "and this just might fill the bill." Ourand mentioned a Bob Gainer.[1] From there the record is as follows:

"Q. Did you, yourself, talk to Mr. Gaynor? A. No, I did not.

"Q. Now, did Mr. Gaynor end up buying the property? A. No, Mr. Gaynor did not, as far as I know. I really don't know exactly what happened. As far as I know, he did not.

"Q. Well, as far as you were concerned, how did Mr. Bornstein come into the picture? A. Through Mr. Gaynor.

"Q. Did you ever talk to Mr. Bornstein? A. No, I did not.

"Q. Well, actually, my question here concerns how you procured Mr. Bornstein. Now, is what you have told me the substance of the way that you secured Mr. Bornstein? A. In substance.

---

1. Gainer is the correct spelling. He was referred to as "Gaynor" in the deposition.

There were several phone calls back and forth to Ourand. He was telling me that Gainer [sic] had another gentleman by the name of Bloom and they were going to try to buy them together. And Gaynor, I understood it, was looking for a financial backer to help them buy these lots. And from time to time, Ourand told me what was going on, but I never talked to the gentlemen, themselves.

"Q. Did you ever talk to Mr. Bloom? A. No, I did not.

"Q. Do you remember a Mr. Diamond? A. No. Well, I did not know of Mr. Diamond until these other proceedings started taking place.

"Q. Are you aware that the actual purchaser, the grantee on the deed, was R-B and Associates, Inc., a corporation? A. That's what I'd been led to believe, after the suit was started here. I didn't know at that time.

"Q. Do you know who the principals are in R-B Associates? A. I don't know them, no, sir."

Under the apparent theory that Maryland Rule 402 relative to depositions prior to the institution of an action for the purpose of perpetuating testimony is also intended for discovery purposes, Griffith, without objection from Melbourne, took Melbourne's deposition prior to institution of the action. Melbourne recited that he showed lots to Gainer at Gainer's request. Melbourne was advised by Gainer that he knew Ourand who told him of the lots, after which he decided to investigate. Gainer drove out, saw them, saw Melbourne's sign, and then called Melbourne. Gainer later informed Melbourne that he was not able to put together a deal. However, he introduced Melbourne to a man by the name of Bloom. A number of conversations took place with Gainer's indicating that he was "trying to talk Mr. Bloom into buying the property. But that he hadn't been successful." Subsequently Gainer introduced Melbourne to Mr. Bornstein, President of R-B Associates, Inc., the ultimate purchaser.

In support of Melbourne's motion for summary judgment he attached the affidavit of Bornstein which said in relevant part:

"4. That in November of 1968, he learned of said property from one Robert Bloom, who told him (Bornstein) that he (Bloom) had learned of the property from one Robert Gainer.

"5. That he has recently been informed and therefore avers that said Robert Gainer learned of the property from one 'Bud Ourand.'

"6. That neither Robert Gainer nor 'Bud Ourand' have now, nor have they ever had any financial interest in said property or R-B Associates, Inc.

"7. That he does not know, nor has he ever had any contact or communication, with Felix M. Irwin, Jr., with M. W. Griffith, or with 'Bud Ourand.' "

The mandate of Rule 610 d 1 is that "the pleadings, depositions, and admissions on file, together with the affidavits, if any" shall be considered on the motion for summary judgment and that "[t]he judgment sought shall be rendered forthwith" if they "show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Griffith filed no affidavits. The only other depositions in the file at the time of the motion were those of two directors of the owner of the real estate sold, neither of which had a bearing on whether Irwin was the procuring cause of the sale.

Where, as here, the pleadings, the depositions, and the affidavits submitted by the moving party set forth sufficient competent evidence to entitle him to summary judgment, it is incumbent upon the opposing party to present such evidence as will give rise to a triable issue of fact in order to prevent the entry of summary judgment. To do this he must show by facts admissible in evidence that there is a genuine dispute as to a material fact. *Fish-*

*man Const. Co. v. Hansen,* 238 Md. 418, 422-23, 209 A. 2d 605 (1965). This is no less true when the moving party is the defendant rather than the plaintiff. A bald assertion of liability and a mere formal denial of liability stand on the same basis. Neither is sufficient in and of itself to prevent entry of summary judgment in favor of the moving party.

The material, central issue in this case is whether Irwin was the procuring cause of the sale. The affidavit and Irwin's deposition show he was not. Since Griffith has not by affidavit or deposition shown anything to the contrary, there is no genuine dispute as to a material fact. Summary judgment should have been entered in favor of Melbourne.

> *Judgment reversed; judgment entered in favor of P. G. Melbourne against M. W. Griffith for costs in this Court and in the Circuit Court for Prince George's County.*