623 A.2d 731

**Joseph Frederick BOND t/a J & E Plumbing**

v.

**NIBCO, INC.**

**No. 1327, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

April 30, 1993.

William R. Lenck (Harry W. Blondell and William J. Blondell, Jr., Chartered, on the brief), Baltimore, for appellant.

John D. Kromkowski (Robert T. Franklin, Lisa D. Fentress and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee.

Argued before BISHOP, MOTZ and JAMES S. GETTY, (Retired), Specially Assigned, JJ.

MOTZ, Judge.

This case involves application of the principles governing the grant of summary judgment.

(i)

On November 16, 1989, appellant, Joseph F. Bond, trading as J & E Plumbing, filed a single count complaint in the Circuit Court for Baltimore County, against appellee, NIBCO, INC., alleging breach of warranty and claiming $500,000.00 in "consequential and incidental damages." Bond, a licensed plumber, alleged that he successfully bid on a plumbing installation contract for the Daybreak Section I Townhomes in Baltimore County, Maryland. At various times between November 20, 1985 and April 25, 1986, he purchased NIBCO washerless faucets from Northeast Plumbing Supply for use in this contract. The faucets were accompanied by a NIBCO five-year limited warranty. Bond installed these faucets in the townhouses pursuant to the plumbing installation contract. After the townhouses were sold, in the fall of 1986, Bond began receiving complaints about the faucets leaking. These complaints continued through the spring of 1988. Bond notified NIBCO; NIBCO agreed to pay both the replacement cost of the faucets and Bond's labor to replace the faucets.

Thereafter, Bond bid on a plumbing contract for the Daybreak Section II Townhomes, which were being built by the same developer who had built the Daybreak Section I Townhomes. Even though Bond's bid was the lowest, he was not awarded that plumbing installation contract, allegedly because of the faucet problems experienced at the Daybreak Section I development. Bond was also informed that he would not be considered for a third plumbing contract (for the Daybreak Section III Townhomes) with this same developer because of the faucet problems.

Bond further alleged that NIBCO "expressly and impliedly warranted, that the faucets were merchantable and fit for the use they were intended, and contained no undisclosed, latent defects;" that the faucets "breached said warranties because they were unfit for the use which they were intended;" that he "relied on the warranties made by the Defendants and was caused to suffer and sustain loss of profit and damage to reputation to [sic] direct and proximate result of such reliance and as a direct and proximate result of said breach by the

Defendant." Finally, Bond alleged that the breach of warranties "directly and proximately resulted in consequential and incidental losses damages" to him in the amount of $500,000.

After limited discovery, on January 31, 1992, NIBCO filed a motion for summary judgment and supporting memorandum. In that motion and memorandum, NIBCO asserted that it was entitled to summary judgment on five grounds. NIBCO attached to its memorandum a copy of its limited warranty, which expressly excluded liability for "incidental and consequential damages." No other exhibit and no affidavit, deposition extract, interrogatory answer, or other material of any kind was submitted in support of the motion. Bond filed a "response" to the motion on February 18, 1992. In that response, Bond asserted that there were "many disputes as to material facts." Bond did not file any affidavit, deposition, interrogatory answer, or other material in support of his position. NIBCO responded to Bond's response; no evidentiary materials were filed by NIBCO in support of its response.

The trial court heard argument on the motion on April 27, 1992. Six weeks later, on June 12, 1992, the circuit court issued an order granting NIBCO's motion for summary judgment. The lower court's ruling, in its entirety, is:

Having considered the argument of counsel and the pleadings previously filed, it is the ruling of the Court that Defendant's Motion for Summary Judgment (paper # 20) is granted as no factual dispute exists between the parties. Summary judgment is granted in favor of Defendant for costs.

On appeal, Bond presents the following questions for review:

1. Does the issue of the applicability of the defendant's limited warranty preclude summary judgment in this action?

2. Are lost profits and/or loss of anticipated profits, goodwill and reputation recoverable damages in Maryland?

NIBCO, however, asserts that since the lower court did not state the "specific basis" for its order, Bond "must convince

[this Court] that *all* possible grounds were erroneous." (emphasis in original). NIBCO then proceeds to argue that the grant of summary judgment was proper on the following grounds, which we have reordered, but not in any way restated:

1. Plaintiff has failed to state a claim against NIBCO for breach of express warranty because NIBCO was not a seller.

2. The Plaintiff has no claim against NIBCO for breach of an implied warranty of fitness for a particular purpose.

3. The Plaintiff has not sufficiently alleged a breach of warranty of merchantability under Md.Com.Law Code Ann. § 2–314.

4. Because an expert is required as proof of defect in a breach of warranty case, summary judgment for the Defendant was properly entered where Plaintiff could produce no such expert.

5. The Plaintiff's claims for incidental and consequential damages are precluded by a valid exclusion.

6. Damages for "loss of goodwill" are not recoverable as a matter of law for breach of warranty.

All of the above arguments were asserted by NIBCO as a basis for its summary judgment motion.

It would certainly be preferable to have before us the basis for the circuit court's order. This would not only give us the benefit of the circuit court's reasoning as to why summary judgment was proper but also make it clear whether the lower court found any of the asserted grounds lacked merit, *i.e.,* did not support the grant of summary judgment. In the absence of any such discussion, we must assume that the circuit court carefully considered all of the asserted grounds and determined that all or at least enough of them as to merit the grant of summary judgment were meritorious. We will address the first four grounds, dealing with the warranties, and then the last two, which concern damages. Before analyzing any of these issues, however, because the parties appear confused, both here and in the court below, as to the standards govern-

ing motions for summary judgment, we briefly address those standards.

### (ii)

▇▇ Maryland Rule 2–501 provides in pertinent part:

Any party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law.... The response to a motion ... shall identify with particularity the material facts that are disputed.... The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Md.Rule 2–501(a), (b), and (e) (1993). Thus, a moving party must set forth sufficient grounds for summary judgment. Although the movant is not required to support his motion with an affidavit unless he files it "before the day on which the adverse party's initial pleading or motion is filed", *see* Md.Rule 2–501(a), he must support his various contentions by placing before the court facts that would be admissible in evidence or otherwise detailing the absence of evidence in the record to support a cause of action. *See Washington Homes, Inc. v. Interstate Land Dev. Co., Inc.*, 281 Md. 712, 716, 382 A.2d 555 (1978).

▇▇ The Supreme Court and the Court of Appeals have, in recent years, emphasized that a trial court should not be reluctant to grant a motion for summary judgment in an appropriate case. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *King v. Bankerd,* 303 Md. 98, 492 A.2d 608 (1985); *Washington Homes,* 281 Md. at 717, 382 A.2d 555. In *Seaboard Surety Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 242–45, 603 A.2d 1357 (1992), we discussed at some length these teachings, emphasizing that a motion for summary judg-

ment, although not a substitute for trial, is nevertheless *not* disfavored. A proper summary judgment motion is to be granted unless the parties truly dispute a material fact, *i.e.*, the evidence is such that a fair minded jury could return a verdict for the nonmovant. *Id.* at 244, 603 A.2d 1357. For this reason, although a party opposing a proper motion for summary judgment need not file an affidavit unless "the motion ... is supported by an affidavit or other statement under oath," *see* Md.Rule 2–501(b), the opponent cannot rely on formal denials or general allegations. *King*, 303 Md. at 112, 492 A.2d 608; *Washington Homes*, 281 Md. at 717, 382 A.2d 555; *Seaboard Surety*, 91 Md.App. at 243, 603 A.2d 1357. Instead, an opponent must "identify with particularity the material facts that are disputed." Md.Rule 2–501(b). Thus, *"[w]hen a moving party has set forth sufficient grounds for summary judgment*, the party opposing the motion must show with 'some precision' that there is a genuine dispute as to a material fact," *Seaboard Surety*, 91 Md.App. at 243, 603 A.2d 1357 (emphasis added), and place before the trial court facts that would be admissible in evidence. *Washington Homes*, 281 Md. at 716, 382 A.2d 555; *Melbourne v. Griffith*, 263 Md. 486, 491, 283 A.2d 363 (1971).

All of these principles remain good law; we do not disavow or limit any of them. They are, however, all premised on a *proper* motion for summary judgment. A party moving for summary judgment, like a party filing any other motion, must comply with Md.Rule 2–311. *See* Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 171 (2d ed. 1992) ("Niemeyer"). *See also* Md.Rules Committee, Minutes of Oct. 17, 1981 meeting, at 48 ("Rule 2–311 ... governs all motions, including summary judgment motions"). That is, if the summary judgment motion is based on facts not contained in the record or papers on file in the proceeding it "shall be supported by affidavit and accompanied by any papers on which it is based." Md.Rule 2–311(d) (1993).

Moreover, as the Supreme Court noted in articulating its now famous *Celotex* holding, even when an affidavit is not necessary

> ... a party seeking summary judgment *always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,* depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," *which it believes demonstrate the absence of a genuine issue of material fact.*

*Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. (emphasis added). "To satisfy the requirement that there be no genuine dispute as to any material fact, the moving party *must include in the motion the facts necessary to obtain judgment and a showing that there is no dispute as to any of those facts.*" Niemeyer at 330 (emphasis added). *Only* if a movant "bears this initial responsibility" or makes this "showing" does the party opposing the summary judgment motion have the burden of identifying "with particularity the material facts that are disputed." Md.Rule 2–501(b). *See Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216, 1221 (5th Cir.1985). Thus, a motion for summary judgment that simply asserts that the opponent has not identified disputed facts is not sufficient. A summary judgment movant usually is not required to file an affidavit, *see* Md.Rule 2–501(a), but *if* the movant disputes facts alleged in the complaint (or answer if the movant is the plaintiff), the movant must himself identify the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Indeed, the movant must attach "as an exhibit" to his motion "any document" that he "wishes the court to consider in ruling on the motion ... unless the document is adopted by reference as permitted by Rule 2–303(d) or set forth as permitted by Rule 2–432(b)." Md.Rule 2–311(c) (1993). With these principles in mind, we turn to the questions at issue in this case.

### (iii)

NIBCO's initial argument as to the propriety of the summary judgment motion is that Bond failed to state a claim against NIBCO for breach of an express warranty. On ap-

peal, Bond has apparently conceded the absence of any express warranty claim. Bond makes no argument on that point in its appellate brief, and in response to direct questions at oral argument, acknowledged this concession. Since on appeal Bond makes no claim that summary judgment was improper as to the express warranty claim, we affirm the grant of judgment as to it.

■ NIBCO's second argument is that Bond "has no claim against NIBCO for breach of an implied warranty of fitness for a particular purpose." This is phrased as, and is more properly treated as, the basis for a motion pursuant to Md. Rule 2–322(b)(2) (1993) (dismissal is proper because the complaint fails "to state a claim upon which relief can be granted"). Md.Code Ann., Com.Law § 2–315(1) (1992) provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

The official comment to this portion of Maryland's codification of the Uniform Commercial Code explains:

A "particular purpose" differs from the ordinary purpose for which goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and to uses which are customarily made of the goods in question.

Com.Law § 2–315 cmt. 2.

All that Bond alleged in his complaint was that he purchased NIBCO faucets from a plumbing supply company, that he installed them in new townhouses, that the faucets leaked and that by NIBCO's "own admissions ... cartridges inside the faucet[s] were defective causing the leak problem." Bond nowhere alleged that he bought the faucets for a "particular purpose" that in any way differed from the "ordinary purpose" for which these faucets might be used, let alone that NIBCO,

which manufactured but did not sell these faucets to him, knew of this "particular purpose." Accordingly, Bond's complaint fails to state a claim for breach of implied warranty for a particular purpose, and so judgment was properly entered for NIBCO on this claim.

NIBCO next claims that summary judgment on the claim of breach of implied warranty of merchantability was also proper. Section 2–314 of the Commercial Law article of the Maryland Annotated Code provides

[u]nless excluded or modified . . ., a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . .

Goods to be merchantable must be at least such as

(a) Pass without objection in the trade under the contract description; and

(b) In the case of fungible goods, are of fair average quality within the description; and

(c) Are fit for the ordinary purposes for which such goods are used; and

(d) Run, within variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(e) Are adequately contained, packaged, and labeled as the agreement may require; and

(f) Conform to the promises or affirmations of fact made on the container or label if any.

Com.Law § 2–314(1) and (2). In an action for breach of implied warranty of merchantability the plaintiff must show that the warranty existed, that the warranty was breached, and that the breach was a proximate cause of the injuries claimed. *Mattos, Inc. v. Hash,* 279 Md. 371, 379, 368 A.2d 993 (1977); *Virgil v. "Kash N' Karry" Service Corp.,* 61 Md.App. 23, 29, 484 A.2d 652 (1984), *cert. denied,* 302 Md. 681, 490 A.2d 719 (1985).

NIBCO argues that Bond "has not sufficiently alleged a breach of warranty for merchantability." This suggests that

NIBCO is once again in fact making an argument that is more properly the basis for a Md.Rule 2–322(b)(2) motion. NIBCO goes on to explain, however, that its actual argument is that Bond has "failed to state which of the [Com.Law § 2–314(2) subsections] has been breached," that Bond has "failed to even allege the exact nature of the purported defect" and so, NIBCO maintains, "[w]ithout further allegation or proffer of evidence in response to the motion for summary judgment," Bond has "failed to sufficiently show an issue of fact with respect to the existence of a warranty." NIBCO's argument evidences a misunderstanding of both what is necessary to state a cause of action for breach of an implied warranty of merchantability and what the summary judgment rules require.

As to the former, a plaintiff who alleges breach of warranty of merchantability is not obligated to identify which factors under § 2–314(2) are breached. Indeed,

> [s]ubsection (2) does not purport to exhaust the meaning of "merchantable" nor to negate any of its attributes not specifically mentioned in the text of the statute ... The language used ... [was intended] to leave open other possible attributes of merchantability.

Com.Law § 2–314 cmt. 6. As this Court has held, a plaintiff may successfully state a claim for breach of implied warranty of merchantability by alleging at the time of sale and delivery that the seller impliedly warranted that the good would be fit for its ordinary purpose. *See Thomas v. Ford Motor Credit Co.*, 48 Md.App. 617, 623–25, 429 A.2d 277 (1981). Bond has alleged that NIBCO warranted "that the faucets were merchantable," that in fact the faucets were defective, that the defect breached the warranty, and that this breach proximately caused him $500,000 in damages. Bond's complaint does, at least minimally, allege a cause of action for breach of implied warranty of merchantability. *See Mattos, Inc.*, 279 Md. at 379, 368 A.2d 993.

It is true, as NIBCO argues, that in response to NIBCO's motion for summary judgment, Bond did not offer

any evidence to support the allegations in his complaint. Nor did Bond offer any expert testimony or assert that he had retained an expert to testify that the faucets were defective.[1] What NIBCO fails to appreciate is that Bond had no obligation to do any of these things. NIBCO, the summary judgment movant, bore the "initial responsibility of informing" the circuit court "of the basis for its motion," *i.e.* identifying and attaching those parts of the record or other documents that demonstrated there was no genuine issue of material fact as to the implied warranty of merchantability. *See* Md.Rule 2–311(c); *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. With regard to the implied warranty of merchantability claim, NIBCO utterly failed to do this.

NIBCO obviously disputed the allegations in Bond's complaint that the faucets were defective and that this defect breached a warranty of merchantability. Yet, instead of demonstrating to the trial court that the facts with regard to one or both of these matters were indisputably as NIBCO claimed they were, *i.e.*, no defect and/or no breach, NIBCO simply asserted that Bond had failed to offer evidence to prove these

---

1. NIBCO asserts, as a separate argument in support of the grant of the motion for summary judgment, that as a matter of law "an expert is *required* as proof of defect in a breach of warranty case." (emphasis added). This is not an accurate statement of the law. Although expert testimony may often be helpful in a design defect case, it is *"only* required when the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman." *See Virgil*, 61 Md.App. at 31, 484 A.2d 652 (holding expert testimony not necessary to show a thermos bottle that explodes is defective) (emphasis added). *Lee v. Baxter Health Care Corp.*, 721 F.Supp. 89 (D.Md.1989) *aff'd.* 898 F.2d 146 (4th Cir.1990) (per curiam) upon which NIBCO heavily relies is not to the contrary. In *Lee*, the court merely quoted the phrase from *Virgil* we have just set forth. In *Lee*, expert testimony was necessary because the cause of the injuries claimed was a "highly technical medical question." 721 F.Supp. at 96. Here, there is nothing in the record to date to indicate that the cause of the leaking faucets was a "highly technical" question of any sort. Indeed, Bond alleged that NIBCO's "own admissions," presumably in connection with authorizing repair of the faucets, indicate that the design of the faucets was defective and caused the leaks. Accordingly, an expert was not necessary as a matter of law, at least at the summary judgment stage, to prove the defect.

allegations in the complaint. What NIBCO attempted to do was to use a motion for summary judgment, unsupported by any evidentiary material, to obtain judgment, when a motion to dismiss pursuant to Md.Rule 2–322(b)(2), grounded on the *same basis,* would have been unsuccessful. A defendant cannot increase a plaintiff's burden simply by filing an unsupported motion for summary judgment.

Lest there be any doubt, we repeat, a movant is usually not—and NIBCO here was not—required to support its motion for summary judgment with an affidavit or any other evidentiary material. *See* Md.Rule 2–501(a). But if a movant, like NIBCO here, disputes a fact alleged in the other party's complaint or answer, then its motion for summary judgment must "attach" and identify the parts of the record or other "documents" that "it believes demonstrate the absence of a genuine issue of material fact." *See* Md.Rule 2–311(c); *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Only if a movant meets the initial burden does the burden shift to the party opposing summary judgment to show "with 'some precision' that there is a genuine dispute as to a material fact." *Seaboard Surety,* 91 Md.App. at 243, 603 A.2d 1357. NIBCO did not identify and attach any pleading, deposition, interrogatory answer, admission, affidavit, or other document that it believed demonstrated there was no defect or no breach of an implied warranty of merchantability. Thus, Bond, who had properly alleged that there was a defect, a breach of an implied warranty of merchantability, and damages resulting from the breach, had no obligation to show with "some precision" the facts in dispute as to this claim. If summary judgment was granted to NIBCO on the claim of breach of implied warranty of merchantability, it was error. Accordingly, we must turn to an examination of the issues concerning damages.

(iv)

■ The only items for which Bond sought to recover damages in his Complaint were "a. Loss of business for plumbing work at the Daybreak Section Two Townhouses; b. Damage to reputation; c. Losses of prospective contracts

with Daybreak Estates Corporation; and, d. Other substantial loss of profit and damage to reputation." These are all, as Bond concedes, consequential damages. NIBCO in its summary judgment motion argued that Bond's claims for consequential damages were precluded by a limited warranty, which expressly precluded any recovery for such damages. In making this argument, however, rather than simply relying on rhetoric and claims that Bond did not offer evidence to support his position, NIBCO attached as an exhibit to the summary judgment papers the "warranty literature accompanying the faucets." We note that this "literature," labelled the "NIBCO Washerless Faucets Five Year Limited Warranty," was not submitted under oath, which would have been the better practice. NIBCO did, however, assert that it obtained the document *from Bond,* in response to NIBCO's request for production of documents. Accordingly, with regard to this argument, NIBCO did precisely what it failed to do with regard to its argument as to the implied warranty of merchantability, *i.e.,* it met its initial burden, as the summary judgment movant, by identifying and attaching those parts of the record that it believed demonstrated the absence of a genuine issue of material fact.

The NIBCO Washerless Faucets Five Year Limited Warranty, provides in pertinent part that

NIBCO INC. warrants this faucet to be free from defects in materials and workmanship for a period of five (5) years from the date of purchase.

. . . .

In the event any defect occurs which the owner believes is covered by this Warranty, the owner should immediately contact NIBCO INC. . . . The owner will be instructed to return the cartridge or other part, at the owner's expense, to NIBCO INC. . . . Replacements shall be mailed free of charge to the owner. . . .

THIS WARRANTY SPECIFICALLY EXCLUDES INCIDENTAL AND CONSEQUENTIAL DAMAGE OF EVERY TYPE AND DESCRIPTION RESULTING FROM

ANY CLAIMED DEFECT IN MATERIAL OR WORK-
MANSHIP, INCLUDING BUT NOT LIMITED TO PER-
SONAL INJURIES AND PROPERTY DAMAGES. Some
states do not allow the exclusion or limitation of incidental
or consequential damages so these limitations may not apply
to you.

(emphasis in original).

In Maryland, "[r]emedies for breach of warranty can be
limited in accordance with the provisions of [Commercial Law
Article, Title 2] on liquidation or limitation of damages and on
contractual modification of remedy." Md.Code Ann., Com.
Law § 2–316(4). *See also Boatel Industries, Inc. v. Hester,* 77
Md.App. 284, 300, 550 A.2d 389 (1988). Furthermore, al-
though consequential damages are generally available,

[c]onsequential damages may be limited or excluded unless
the limitation or exclusion is unconscionable. Limitation of
consequential damages for injury to the person in the case
of consumer goods is prima facie unconscionable but limita-
tion of damages where the loss is commercial is not.

Md.Code Ann., Com.Law § 2–719(3). *See also McCarty v.
E.J. Korvette, Inc.,* 28 Md.App. 421, 430, 347 A.2d 253 (1975).
Thus, NIBCO's exclusion of incidental and consequential dam-
ages is not prima facie unconscionable. Moreover, Bond does
not claim that it is unconscionable as applied in this commer-
cial context involving no "injury to the person." Accordingly,
unless there is some dispute as to material fact with regard to
this exclusion, it validly precludes Bond from recovering con-
sequential damages—the only damages he claims.

In response to NIBCO's proper motion for summary judg-
ment on this point, Bond failed to meet his burden of showing
with " 'some precision' that there is a genuine dispute as to a
material fact." *Seaboard Surety,* 91 Md.App. at 243, 603 A.2d
1357. For example, Bond did not question by affidavit or
otherwise, the authenticity of the limited warranty or deny he
received it. Indeed, at oral argument, Bond's counsel express-
ly confirmed that there was no dispute as to the following
facts: when Bond purchased the faucets, he received the

limited warranty set forth as an attachment to NIBCO's summary judgment motion.

Bond did argue below and continues to argue that "there is a question of fact as to whether the exclusion governs" his rights because it "seems to be directed at the ultimate user or consumer 'owner' of the faucet" and he was not the "ultimate user or consumer owner of the faucets." This, however, is not a factual question; it is a legal question, requiring only interpretation of the language of the NIBCO limited warranty. It is true that the limited warranty is directed at the "owner" of NIBCO washerless faucets. For example, it directs that "in the event any defect occurs which the owner believes is covered by this Warranty, the owner should immediately contact NIBCO, Inc." Further, it explains that "replacements shall be mailed free of charge to the owner." There is nothing, however, in this language that purports to limit the applicability of the exclusion to the "ultimate user or consumer owner of the faucets." Bond, at least for a period of time, was the owner of the faucets and thus subject to the exclusion in the limited warranty. Indeed, it was only because he was part of the chain of ownership of the faucets that he has any claim for breach of an implied warranty of merchantability. Accordingly, Bond's legal argument on this point fails. Since, as noted above, he has also failed to dispute any of the material *facts* concerning the exclusion, the exclusion is applicable to Bond and validly precludes him from recovering consequential damages.

For this reason, the circuit court's order granting summary judgment must be affirmed, even though, as explained above, NIBCO was not entitled to summary judgment on the breach of implied warranty of merchantability theory.[2] This is so because, although NIBCO was not entitled to judgment as a matter of law on the breach of warranty of merchantability theory, Bond has failed to allege any legally recoverable

---

**2.** Also, for this reason, we need not reach NIBCO's remaining claim, *i.e.*, that damages for "loss of good will" are not recoverable as a matter of law.

damages resulting from any claim, including the alleged breach of implied warranty of merchantability.

JUDGMENT AFFIRMED.