720 A.2d 959

Tina CASEY, a Minor, etc. et al.

v.

Vivian GROSSMAN.

No. 1760, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Nov. 30, 1998.

752

Suzanne C. Shapiro (Scott E. Nevin, Saul E. Kerpelman and Saul E. Kerpelman & Associates, P.A., on the brief), Baltimore, for Appellants.

Joseph S. Kaufman (Howard J. Schulman, on the brief), Baltimore, for Appellees.

Argued before THIEME and SONNER, JJ., and PAUL E. ALPERT, Judge (Retired, Specially Assigned).

THIEME, Judge.

This is appellant's second appeal in a case involving lead paint exposure. In her prior appeal this Court remanded the case to the Circuit Court for Baltimore City for a new trial. Appellant suggests that the issues of this appeal, which have been reworded and renumbered, are

I. Did the circuit court err in granting summary judgment in favor of appellee?

II. Did the circuit court err in denying appellant's motion for reconsideration, holding that the record lacked legally sufficient evidence to permit a fact finder to conclude that the landlord's negligent act was a substantial factor in causing lead paint injury to the minor?

We answer "yes" to both questions.

### Facts

The appellant, Tina Casey, was born on June 24, 1980. In August 1981, she and her mother, Michelle Robinson, moved to 1951 West Fayette Street in Baltimore. The subject property was leased by Gloria and Melvin Wilson, appellant's maternal grandmother and step-grandfather. The property owner was appellee, Vivian Grossman, who had owned the property from before 1980 until December 12, 1981.

Appellant was first diagnosed with elevated blood lead levels in April 1981, prior to her residency at appellee's property. As a result of that diagnosis, appellant was tested at various

times including once per month during August and September 1981. Her blood lead levels were 44 and 38 micrograms per deciliter of whole blood (mu g/dl), respectively. At the time, a level of 30 mu g/dl was considered the upper limit of normal.

On September 17, 1981, appellee was advised by a health department inspector that a lead hazard existed on her property. On September 23, 1981, the Baltimore City Health Department issued a lead paint violation notice to the appellee. Appellee was given until October 15, 1981, to abate the hazard. The Health Department reinspected the property and noted that all affected areas were in compliance on October 28, 1981. In December 1981, a venous blood test showed appellant's lead level at 30 mu g/dl. Appellee sold the Fayette property on December 16, 1981.

Appellant, by her mother, filed suit on February 14, 1989, against appellee, as well as various other defendants, based on negligence. Appellant alleged that she was exposed to lead-based paint and contracted lead poisoning while a tenant at appellee's property. A jury returned a verdict in favor of Tina Casey. Two of the defendants, including Grossman, appealed to this court, which reversed and remanded the case as to Grossman. *Bartholomee v. Casey,* 103 Md.App. 34, 651 A.2d 908 (1994), *cert. denied,* 338 Md. 557, 659 A.2d 1293 (1995). The reversal was based on Casey's failure to establish that the conduct of Grossman was a substantial factor in causing a lead paint injury to her. The case was remanded to permit Casey to produce evidence that the conduct of Grossman was a substantial factor in causing harm.

Upon remand, appellant again deposed J. Julian Chisolm, M.D. Based on his deposition, appellee moved for summary judgment on the ground that appellant Casey had again failed to prove causation. The circuit court agreed and granted summary judgment in favor of appellee on December 26, 1996. On January 24, 1997, appellant filed a motion to reconsider the summary judgment in favor of appellee. By memorandum opinion, on July, 25, 1997, the motion to reconsider was denied. On October 16, 1997, appellant filed this appeal.

## Discussion

Before we consider the appeal from the granting of summary judgment, we will first review the dates and procedural posture of this case for clarity.

12/26/96: Summary judgment granted in favor of appellee.[1]

1/24/97: Appellant filed a Motion to Reconsider Summary Judgment.

7/25/97: Appellant's Motion to Reconsider denied, under Rule 2–535.

10/3/97: A notice of Voluntary Dismissal was filed as to all remaining defendants.[2]

10/16/97: Appellant filed this timely appeal.

A final and appealable order was entered on October 3, 1996, when the case as to the remaining defendants was disposed of. Since the appeal was subsequently filed on October 16, 1997, it was filed well within the thirty days allowed.

### I.

As to the issue of summary judgment in favor of appellee, Md. Rule 2–501(e) states that summary judgment is appropriate "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." A trial court determines whether any factual issues exist, and must resolve all inferences against the moving party. *Inner Harbor v. Myers*, 321 Md. 363, 368, 582 A.2d 1244 (1990). A jury issue exists if there is "*any* evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury. Meager evidence of negligence is sufficient to carry the

---

1. This summary judgment was not a final judgment. The case as to the other defendants, KGB Assoc., Nat'l Realty, Jerome Golub and Max Berg was not disposed of. The order also did not indicate that it was a final judgment pursuant to Maryland Rule 2–602.

2. On this date a final appealable judgment existed as to appellee.

case to the jury." *Richwind v. Brunson*, 96 Md.App. 330, 350, 625 A.2d 326 (1993), *aff'd in part, rev'd in part*, 335 Md. 661, 645 A.2d 1147 (1994) (emphasis in original).

To begin our analysis of the case, we review what occurred at the hearing for summary judgment and the briefs and evidence submitted by the parties. During the hearing before the *motions hearing judge*, appellee argued that the record in the case before the trial court that day was essentially the same as that in the prior case of *Bartholomee v. Casey*. The only exception was evidence contained in a deposition of Dr. Chisolm. Appellee then explained that "the Court of Special Appeals is clearly the law of the case," and then attempted to paraphrase what this Court stated in *Bartholomee v. Casey*. Appellee told the trial court that what this Court said was that the defendant/appellee could only be liable for a discrete period of time between September 17, 1981,[3] and October 15, 1981 (*i.e.* notice and abatement).

■ Appellee's description of the evidence before the trial court, as well as appellee's interpretation of what this Court stated in its prior opinion, although not accurate, was presumably relied upon by the trial court in its ruling in favor of appellee. As to appellee's statement regarding the record, pursuant to Rule 2–311(c), appellant attached the trial testimony of Michelle Robinson (appellant's mother) to the Response to Defendant's Motion for Summary Judgment, marking it Exhibit #1. Ms. Robinson testified at trial that, even after the abatement in October 1981, there was chipping paint on the floor, vestibule area, and window sills. This testimony was found by this Court to have been prejudicial in the prior appeal, because it contradicted appellant's answers to interrogatories, no supplemental answers to interrogatories were filed, and the affidavits that averred that chipping paint persisted after abatement were filed four days before trial. Thus, we found that Ms. Robinson's testimony constituted an

---

3. September 17, 1981, is the date on which a health department inspector informed appellee that a lead hazard existed on her property. A violation notice was issued on September 23, 1981.

unfair surprise to appellee and that the trial court erred by allowing the evidence in that case. We also stated:

Our determination, however, does not necessarily preclude admission of the evidence at any retrial, for Grossman could no longer claim surprise or prejudice.

*Bartholomee v. Casey,* 103 Md.App. at 50–51, 651 A.2d 908.

When appellant attached the testimony of Michelle Robinson to her Response, she re-offered the evidence in this case. Therefore, there was more than just the deposition of Dr. Chisolm before the trial court, and the testimony should have been considered in deciding the issue of summary judgment.

■ As to whether this Court limited the time frame to September 17 through October 15, 1981, we find no such language in our opinion. When we mentioned dates in our discussion on the evidence of causation at the prior trial, we stated:

Dr. Chisolm never opined as to the impact on Casey of exposure to lead paint between September 23, 1981 and December 16, 1981 (*i.e.,* from notice to sale). Accordingly, without expert testimony that exposure during this window, *by itself,* was a substantial causation factor of Casey's lead poisoning, the jury had to speculate as to the impact of exposure during that period . . . .

*Id.* at 59, 651 A.2d 908 (emphasis in original).

In our discussion on notice and abatement, we stated that, because Grossman knew of the hazard following her notification by the City,

a jury could, in theory, find that Grossman did not abate quickly enough. Further, with sufficient expert testimony, the jury could determine that Casey's exposure to lead during the one month period (between September 23, 1981 and October 15, 1981) constituted a substantial factor in Casey's lead poisoning. Of course, to establish causation, Dr. Chisolm would have to testify as to the impact of the limited exposure during the one month window. Nonetheless, we cannot now say, as a matter of law, that Grossman

responded quickly enough to preclude a finding of negligence. Accordingly, the case as to Grossman must be remanded for a new trial.

*Id.* at 60, 651 A.2d 908.

There is simply no language in our former opinion that would limit appellant in presenting evidence of causation to the time frame suggested by appellee. The explicit language was that the case was "remanded for a new trial." *Id.* Moreover, as already discussed above, this Court stated that evidence of a lead hazard post-abatement (*i.e.* after October 15, 1981), while not admissible in the first trial, would not necessarily be precluded at retrial. Obviously, then, we were not limiting appellant to the October 15th date.

The time frame is critical in this case because of Dr. Chisolm's deposition testimony regarding causation. The latter portion of the deposition reads as follows:

[APPELLANT'S COUNSEL]: ... [Appellee's counsel] has asked you questions about September of '81 to October of '81. If you expand that period from September of '81 to the middle of December of 1981 ..., do you have an opinion within a reasonable degree of medical probability that she was being continuously exposed during that entire time frame?

[Dr. Chisolm]: Oh, yes.

[APPELLANT'S COUNSEL]: And the fact that that is a longer period than we previously discussed, is there any additional significance to that?

[Dr. Chisolm]: Yes.

[APPELLANT'S COUNSEL]: And what is the significance?

[Dr. Chisolm]: Well, it is going to be a greater fraction. And it is occurring between, what is that about 15, 18 months of age. Bad months.

At this point, counsel for appellant had finished his questions. Apparently relying on the limited time-frame theory, counsel for appellee then questioned Dr. Chisolm.

[APPELLEE'S COUNSEL]: And, Doctor, wouldn't it also be a substantial factor that if between the time of abatement on or about October 15, 1981 and December 1981 that would also be a substantially contributing factor, isn't that correct?

[Dr. Chisolm]: Yes.

The testimony by Ms. Robinson, attached as Exhibit # 1 to appellant's Response to Defendant's Motion for Summary Judgment, was the factual basis for Dr. Chisolm's testimony on causation and appellant's exposure to lead after October 15, 1981. The trial court had before it both the evidence of chipping lead paint and Dr. Chisolm's testimony that this was a "substantially contributing factor" in causing appellant's lead paint poisoning. This is obviously some evidence of causation, and, therefore, a genuine dispute as to material facts did exit. The trial court thus erred in granting summary judgment in favor of appellee.

## II.

We are aware of no Rule governing post-trial motions specifically captioned "Motion for Reconsideration." A motion under Rule 2–535 is, however, sometimes called a motion for reconsideration. *Alitalia Linee Aeree Italiane v. Tornillo,* 320 Md. 192, 199, 577 A.2d 34 (1990). Appellant's motion was filed 29 days after the entry of summary judgment, within the thirty days required by Rule 2–535. Thus, we will consider it to be a motion under Md. Rule 2–535, even if it was not labeled as such. *See Gluckstern v. Sutton,* 319 Md. 634, 650, 574 A.2d 898, *cert. denied, Henneberry v. Sutton,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990).

As this Court stated in *B & K Rentals & Sales Co., Inc. v. Universal Leaf Tobacco Co.,* 73 Md.App. 530, 537, 535 A.2d 492 (1988), *rev'd on other grounds,* 319 Md. 127, 571 A.2d 1213 (1990):

This appeal from *the denial of the "motion to reconsider" the judgment does not serve as an appeal from that judgment, and the question presented is whether the hearing judge abused his discretion. New Freedom Corp. v. Brown,* 260 Md. 383, 386 [272 A.2d 401] (1971); *S. & G. Realty v.*

*Woodmoor Realty,* 255 Md. 684, 690 [259 A.2d 281] (1969), (quoting *Lancaster v. Gardiner,* 225 Md. 260, 268–69 [170 A.2d 181], *cert. denied,* 368 U.S. 836 [82 S.Ct. 63, 7 L.Ed.2d 37] (1961)). Such a motion is directed to the sound discretion of the court, and in the absence of abuse thereof no appeal will lie. *Bailey v. Bailey,* 186 Md. 76, 81 [46 A.2d 275] (1946) (citing *Zimmer v. Miller,* 64 Md. 296 [1 A. 858] (1885)). The question to be determined is whether the trial court entertained a reasonable doubt that justice had not been done. *Clarke Baridon v. Union Co.,* 218 Md. 480, 483 [147 A.2d 221] (1958); *Weaver v. Realty Growth Investors,* 38 Md.App. 78, 82 [379 A.2d 193] (1977) (citing *Clarke Baridon v. Union* Co., *supra* ).

(Emphasis supplied.)

On appeal, we review the case on both the law and the evidence, but the judgment of the trial court will not be set aside on the evidence unless clearly erroneous. Rule 8–131(c). In deciding whether the trial court was clearly erroneous and abused its discretion, our function is not to determine whether we might have reached a different conclusion. Rather, as the reviewing court, our role is to assess the sufficiency of the evidence to support the trial court's findings. In making this decision, we must assume the truth of all the evidence, and of all the favorable inferences fairly deducible therefrom, tending to support the factual conclusions of the lower court. *Pahanish v. W. Trails, Inc.,* 69 Md.App. 342, 353–54, 517 A.2d 1122 (1986); *Carling Brewing Co. v. Belzner,* 15 Md.App. 406, 412, 291 A.2d 175 (1972). *See also E. Envtl. Endeavor, Inc., v. Indus. Park Auth.,* 45 Md.App. 512, 519, 413 A.2d 1355 (1980).

■ In order to determine whether appellee's negligent conduct was a substantial cause of appellant's lead paint injury, Maryland has adopted the "substantial factor" rule. *Bartholomee,* 103 Md.App. at 56–57, 651 A.2d 908. The "substantial factor" causation rule dictates that

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

Restatement (Second) of Torts § 431 (1965).

 Whether the exposure of any given person to lead paint will be legally sufficient to permit a finding of substantial factor causation is fact specific to each case. In addition, trial courts must consider the evidence presented to a reasonable degree of medical certainty as to causation of the appellant's particular injury. *Kraft v. Freedman*, 15 Md.App. 187, 193–97, 289 A.2d 614, *cert. denied*, 266 Md. 736 (1972).

The causation question here is whether the evidence and inferences most favorable to appellant support a finding that exposure to lead paint was a substantial factor in causing her injury. Appellee asserts that appellant's proof does not meet the minimum standard set forth in *Bartholomee v. Casey*, and there was, therefore, insufficient evidence for a jury to find that exposure to appellee's lead paint was a substantial factor in causing appellant's injury. We disagree.

The following facts are some evidence of substantial causation of appellant's lead paint injury. Although erroneously stated in the Order denying the Motion to Reconsider as "one month," appellant's residency at appellee's property was from August to December 1981. There is evidence in the record that the Health Department issued a citation in September 1981 because of the existence of lead paint on the premises, thus providing actual notice to appellee. Again, appellant's Exhibit # 2[4] is testimony given by appellant's mother that even after the abatement in October 1981 there was chipping paint on the floor, vestibule area, and window sills. Although this testimony contradicted appellant's answers to interrogatories in the previous case, "credibility is not an issue to be

---

**4.** The trial testimony of Michelle Robinson was attached as Exhibit # 1 to the Response to Defendant's Motion for Summary Judgment. It was marked as Exhibit # 2 when attached to the Motion to Reconsider Summary Judgment.

determined on summary judgment." *Coffey v. Derby Steel Co.*, 291 Md. 241, 247, 434 A.2d 564 (1981).

The medical evidence also supports substantial factor causation. Dr. Chisolm testified to a reasonable degree of medical certainty that appellant was continuously exposed to lead during the entire time between September and December 1981 (*i.e.* notice & sale) and that each exposure has a cumulative effect. Dr. Chisolm also testified that there was significance to the exposure during that period of time, the significance being that it would have been a greater fraction, occurring when appellant was "about 15, 18 months of age. Bad months." When asked about the time frame between October 15 and December 1981 (*i.e.* abatement & sale), Chisolm testified that exposure at that time would also have been a substantially contributing factor. Further, he testified that appellant's blood lead level substantially rose after the abatement process. While this may or may not have been the result of a "spike" in her lead level as a result of the abatement process, it is still some evidence of lead paint substantially causing injury to appellant.

There is also evidence in the record of appellant's blood lead level during the time she resided at appellee's property. The fact that the level was elevated and remained so is some evidence that the lead paint at appellee Grossman's property contributed to appellant's poisoning. In *Johnson v. Rowhouses*, 120 Md.App. 579, 594–96, 707 A.2d 933 (1998), this Court specifically held that a doctor's testimony concerning exposure to lead during a five-month period, without an opinion expressed to a reasonable degree of medical certainty that such exposure was a substantial cause of injury which contributed to elevated lead levels, was insufficient to generate a triable issue on the element of causation.

Although the term was used in this case, it is not necessary that the word "substantial" be used to describe causation. Any word that conveys the same meaning is sufficient. In the case *sub judice* we believe that burden has been met. Dr. Chisolm testified that appellant was exposed during "bad months," during the "critical period." He further testified

that "being exposed during the second year of life is probably more hazardous than during the third year of life. And you are talking about a period when she was one year old, 18 months, so that is a bad time." Specifically, in the last portion of the deposition, when asked whether exposure during the time frame between October and December 1981 would have been a "substantially contributing factor," Dr. Chisolm clearly answered, "Yes."

The trial court held the reconsideration matter *sub curia* and based its ruling on the pleadings submitted by the parties. Appellant attached Exhibit # 2 to her brief just as was done before, in her Response to the Motion for Summary Judgment. In the Order entered by the judge who denied the revisory motion, there is no mention of this evidence. The trial court found that this Court remanded the case to focus "on Plaintiff's [appellant's] exposure to lead during the window of time when this Defendant [appellee] owned the Fayette Property ...." But then, the court cited the testimony of Dr. Chisolm for the limited time frame between notice and abatement in rendering its decision to deny the reconsideration.

The trial court cited testimony such as "a very small segment," and "a very small fraction," and found that these phrases cannot be equated with "substantial" to describe causation. These answers, however, concerned a very limited time frame, usually about one month. Testimony by Dr. Chisolm that was not considered by the trial court was that between October and December 1981 the exposure was a substantially contributing factor and that the abatement process resulted in appellant having significantly elevated blood levels. Dr. Chisolm made it clear in the transcript that "one to three years of age is the period of greatest vulnerability in terms of development of reading and language skills. Therefore, wherever she [was] living at that time, that is when it (the lead) [was] going to do the worst damage." Precisely during the time that appellant was 15 to 18 months old,[5]

---

**5.** Appellant began residing at the property when she was approximately 14 months old, but appellee was not on actual notice that there was a lead paint hazard in existence at that time.

appellant lived in property that appellee owned. Further, the trial court apparently did not consider the testimony by Ms. Robinson that was submitted as Exhibit # 2 because there is no mention of it in the Memorandum and Order.

On review, we are concerned with whether there was a dispute as to any material fact and, if not, whether the movant was entitled to judgment as a matter of law. A material fact is a fact the resolution of which will somehow affect the outcome of the case. *Gross v. Sussex,* 332 Md. 247, 256, 630 A.2d 1156 (1993). The trial court made a factual error in finding that appellant only resided at the West Fayette Street property for one month during the time that appellee owned the property. It erred in not considering the evidence on chipping paint in Exhibit # 2. As discussed above, there are various disputes as to material facts concerning Dr. Chisolm's testimony on causation during different time frames. Accordingly, the trial court erred in denying appellant's Motion to Reconsider Summary Judgment in favor of Grossman.

**JUDGMENTS REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**