732 A.2d 912

**Terran PITTMAN, Jr., a Minor, etc., et al.**

v.

**ATLANTIC REALTY COMPANY, et al.**

No. 1384, Sept. Term, 1998.

Court of Special Appeals of Maryland.

July 6, 1999.

Bruce H. Powell (Saul E. Kerpelman and Saul E. Kerpelman & Associates, on the brief), Baltimore, for Appellants.

Thomas J. Cullen (Heather A. Doherty and Goodell, DeVries, Leech & Gray, LLP, on the brief), Baltimore, for Appellees.

Argued before THIEME, BYRNES and ADKINS, JJ.

THIEME, Judge.

The contradiction that contributed to the birth of the dilemma in this case is like Janus, one of whose faces is represented by a deposition, and the other by an affidavit.

Terran Pittman, by his Next Friend and Mother, Shari L. Hall, the appellants, brought this action, alleging injury due to environmental exposure to lead, in the Circuit Court for Baltimore City. Atlantic Realty ("Atlantic Realty") and Northern Brokerage ("Northern Brokerage"), appellees, respectively, own and manage the property involved. The appellees filed a Joint Motion for Summary Judgment. The appellants responded, and attached to their Response affidavits that directly contradicted previous deposition testimony. The appellees responded with a Motion to Strike the Affidavits. The appellants have appealed the trial court's granting of the appellees' Motion to Strike the Affidavits and the granting of the Joint Motion for Summary Judgment.

The issues presented, which have been reworded for clarity, are

1. Whether the hearing court should have considered appellants' affidavits that contradicted their own discovery responses and were submitted in response to appellees' Motion for Summary Judgment.

2. Whether the hearing court erred in granting appellees' Motion for Summary Judgment.

### Facts

At the time of his birth on December 18, 1990, Terran Pittman and his mother, Shari Hall, resided with Gladys Hall, the minor's maternal grandmother, at 1805 Harlem Avenue in Baltimore. The property at 1805 Harlem Avenue was not

owned by the appellees. During the time that the appellants resided at 1805 Harlem Avenue, there was peeling paint, and the landlord failed to respond to complaints concerning the conditions. Shari Hall testified during her deposition that the 1805 Harlem Avenue property "was falling apart." In addition, she observed Terran put paint chips in his mouth. On October 31, 1991, while Terran was living at the Harlem Avenue address, he first tested positive for lead. In late 1992, when Terran was approximately two years old, the appellants moved from the Harlem Avenue address because of a dispute with Gladys Hall. They moved in with Ms. Rita Porter, who lived at 1908 Lauretta Avenue ("the subject premises"), located just around the corner from Gladys Hall's residence on Harlem Avenue.

After residing for some time at the subject premises, the appellants moved back to 1805 Harlem Avenue around the end of 1992 or beginning of 1993. They continued to reside there until approximately February 1996. On August 12, 1993, a lead paint violation notice was issued to Atlantic Realty for the subject premises.

After this action was filed by Shari Hall as Next Friend and Mother of Terran Hall, the minor appellant, discovery commenced pursuant to a Modified Pre-trial Conference Order. The appellants alleged that Terran was exposed to lead-based paint while living at the 1805 Harlem Avenue premises and the subject premises during a time span of 1990 to 1996. In Shari Hall's answers to the interrogatories of Housing Authority of Baltimore City ("HABC"),[1] she stated that the appellees contributed to Terran's injuries.

INTERROGATORY NO. 24: If you contend that a person not a party to this action acted in such a manner as to cause or contribute to this occurrence, identify that person and give a concise statement of the facts upon which you rely.

---

**1.** The Harlem Avenue property was managed by the Baltimore City Housing Authority, which was also a party to the underlying action, but was voluntarily dismissed without prejudice.

ANSWER: That other than 1805 Harlem Avenue, the minor Plaintiff was cared for at 1908 Lauretta Avenue, by Rita Porter, during the hours of 8:00 a.m. through 4:00 p.m., Monday through Friday. Said property was owned by Atlantic Realty Company, 710 N. Howard Street, Baltimore Maryland 21201. Attached hereto find documents relating to said dwelling.

Nowhere in her answers to interrogatories did Shari Hall indicate what dates pertained to her answer to Interrogatory No. 24. On February 27, 1997, the appellees deposed Shari Hall. In her deposition testimony, Shari Hall testified that she moved into the subject premises in the fall of 1992, and stayed for about two months. She recalled that it had been in the fall of 1992 because it was near Terran's birthday:

Q. And you stayed in this house for a couple -

A. For about two months. Yes, my mother put me out.

Q. And can you remember exactly when that was that she put you out?

A. The time, the date?

Q. Yeah, like the time of year?

A. Ah, man.

Q. What the weather was like, so you can pinpoint the time of year.

A. It was like in the fall, probably.

Q. Ok. Do you remember what year it was?

A. My son was two.

Q. He was two. You know he was definitely two?

A. Or getting ready to turn two. It was somewhere in that area.

Q. Okay. And then you stayed for a couple of months?

A. (nodding head affirmatively)

Later in the deposition, Shari Hall again confirmed that she and Terran lived at the subject property for only two months. She substantiated the fact that it had been a two-month stay by noting that she had paid rent for only two months:

Q. Miss Hall, I'm confused about the time period when you -

A. When I moved?

Q. When you moved in with Miss Porter. First of all, can we just figure out how long did you live with Miss Porter?

A. About two months.

Q. About two months?

A. Yes.

Q. Now, you said that you paid rent to Miss Porter?

A. Right.

Q. Do you remember how long you paid her rent?

A. That's why I said about two months, because I know how many times I gave her some money for rent money.

Q. Which was twice?

A. Which was twice.

Q. So although you're not sure when you moved in, you know it was for—it was not for more than two months, because you only paid two months' rent?

A. Right.

Q. So two months is the maximum that you lived with her?

A. Right, yes.

During her deposition testimony, Shari Hall clarified how much time Terran spent at the subject premises during the time he was not living there. Shari Hall testified that she would take him to the subject premises "probably like twice out of a week or something like that, out of a month, who knows." Generally, the visits to the subject premises would last between one to three hours. In an attempt to discover the relevant dates for Shari Hall's answer to HABC's Interrogatory Number 24, the appellees asked her when Ms. Porter babysat Terran at the subject premises. In response, Shari Hall testified that Ms. Porter occasionally babysat Terran at the subject premises, but she did not do so on a regular basis. In fact, she testified, Ms. Porter babysat Terran at the subject premises only "here and there."

In summary, Shari Hall's testimony reveals that Terran resided at the subject premises for only two months, and that he visited there occasionally. On the other hand, between 1990 and 1996, Terran had resided for a period of several years at the 1805 Harlem Avenue address.

On February 25, 1998, the appellants' expert medical witness, Howard M. Klein, M.D., was deposed. In deposition testimony, Dr. Klein stated that, in light of the period of residence, it was "unlikely" that exposure to lead at the subject premises was a major contributor to Terran's alleged injuries. He further acknowledged that there were, in fact, five major contributors to Terran's cognitive problems. These contributors included (1) lead, (2) smoking, (3) drugs, (4) psychological trauma, and (5) head trauma.

After the discovery phase of the underlying lawsuit was concluded under the Modified Pre-trial Conference Order, the appellees filed a Joint Motion for Summary Judgment based upon the appellants' failure to establish that any of Terran's medical conditions were substantially caused by exposure to lead-based paint at 1908 Lauretta Avenue. The appellees argued in their Motion for Summary Judgment that the appellants had an obligation to produce some medical expert testimony that exposure to lead at the subject premises resulted in cognizable harm from lead poisoning or related ailments. The appellees noted that, because the appellants' expert, Dr. Klein, testified in deposition that the condition of the subject premises was not a substantial cause of Terran's injuries, the appellants had failed to prove causation, and, therefore, the appellees were entitled to judgment as a matter of law.

The appellants responded to the appellees' Motion for Summary Judgment and supported their opposition by attaching affidavits from Shari Hall, Gladys Hall, and Dr. Klein. All three affidavits directly contradicted the earlier testimony given in depositions and interrogatory answers. In her affidavit, Shari Hall stated that she would "visit the residence [at 1908 Lauretta Avenue] on an everyday basis," and that even after she and Terran resumed living with Gladys Hall they

"still spent every day visiting 1908 Lauretta Avenue for approximately eight hours every day."

Gladys Hall stated in her affidavit that "every day Shari Hall and Terran would leave [her] house at 1805 Harlem Avenue at approximately 2:00 p.m. to visit Rita Porter at 1908 Lauretta Avenue. They would not return until 9:00–10:00 p.m. in the evening." After reviewing the affidavits given by Shari Hall and Gladys Hall, Dr. Klein stated in his affidavit:

I have now reviewed the affidavits' [sic] of Shari Hall and Gladys Hall ... Based on information in these affidavits, which clarified deposition testimony and Answers to Interrogatories and assuming this information is correct, it is my opinion within a reasonable degree of medical probability that the premises 1908 Lauretta Avenue was a substantial causal factor in his lead poisoning and resulting injury, substantial meaning significant as opposed to insignificant.

The appellees responded with a motion to strike these affidavits, arguing that the affidavits constituted an improper attempt to engage in additional discovery, in violation of the factual discovery deadline imposed by the court in its Modified Pre-trial Conference Order. The trial court agreed, and granted the appellees' Motion to Strike and the Joint Motion for Summary Judgment.

### *Discussion*

The issue presented in this case is whether the hearing court erred in failing to consider the subsequently filed affidavits because Md. Rule 2–501(b) contemplates such affidavits in opposition to summary judgment. The Rule states:

When a motion for summary judgment is supported by an affidavit or other statement under oath, an opposing party who desires to controvert any fact contained in it may not rest solely upon allegations contained in the pleadings, but shall support the response by an affidavit or other written statement under oath.

The appellants argue that the affidavits were not provided as part of discovery, but rather as mandated by Md. Rule 2–501.

Moreover, appellants contend that since the affidavits were not submitted under the discovery rules, they were then not submitted in violation of the discovery deadlines outlined in the Modified Pretrial Conference Order.[2] If "they shall sow wind, and reap a whirlwind," [3] he who sows confusion harvests even greater confusion. In granting the appellees' Motion to Strike and their Motion for Summary Judgment, the trial court questioned the value of discovery if, "subsequent to the completion of the process any party can create, present or develop or modify the testimony arduously developed in discovery by the stroke of a pen in an affidavit." In his oral opinion, Judge Mitchell stated:

> The court finds this circumstance egregious. We are concerned that the process of discovery can become subverted and rendered meaningless if by the mere presentation of an affidavit constructed more than a year after the presentation of deposition testimony, a witness can so dramatically alter her evidence. There just simply has to be some meaning to this process. . . .

## I

### The Motion to Strike the Affidavits

█ We will begin our analysis by addressing appellants' contention that *Casey v. Grossman,* 123 Md.App. 751, 720 A.2d 959 (1998), addresses the very issue *sub judice,* and is controlling in this matter, for it is in *Casey* that the ideological context of the appellants' synthesis was born and developed.

The appellants' reliance on *Casey* for the proposition that contradictory affidavits can be attached to a motion in an effort to thwart summary judgment is misguided. A brief review of the particular facts in the earlier related case of

---

2. Because appellees believed the information in the affidavits had already been disclosed during discovery, there was no motion for sanctions filed under Md. Rule 2-433, which could have dispensed of this issue by preventing appellant from introducing the affidavits.

3. *Hosea* 8:7.

*Bartholomee v. Casey,* 103 Md.App. 34, 651 A.2d 908 (1994), is in order to clarify why the facts before us now make this case distinguishable from the issue presented in *Casey.*

In *Bartholomee,* the minor plaintiff, Casey, through her mother, filed suit against multiple defendants for injuries sustained as the result of lead poisoning. One of those defendants was Vivian Grossman, the owner of the property where the minor resided for a period of time. Four days before trial, at the proverbial eleventh hour, the plaintiffs produced affidavits that were in direct contradiction to their answers to earlier interrogatories. The trial court allowed the testimony to be introduced at trial, over the defendant's objection to its prejudicial nature. Casey then prevailed at the trial level, and the decision was appealed to this Court. We found that procedurally such an eleventh hour tactic was prejudicial to the defendant, Grossman. As a result, this Court reversed, and remanded the case as to that defendant, so that Casey could provide further proof of causation. The defendant Grossman then prevailed on summary judgment when the trial court found that Casey had not met her burden of establishing substantial causation for the lead paint injury. The case was again appealed to this Court in the case of *Casey v. Grossman.*

In response to Grossman's Motion for Summary Judgment, Casey had attached the same trial testimony of her mother which had been at issue in *Bartholomee v. Casey,* and which we had found prejudicial as to Grossman. We explained in *Casey v. Grossman* that by attaching the testimony to the Motion, it was reintroduced as evidence in the latter case, and created a dispute that would preclude summary judgment. The decision was based on language from this Court in *Bartholomee,* however, where we stated that the barring of such evidence because it was not timely disclosed in discovery would not necessarily preclude admission of the evidence at any retrial. In a retrial, the defendant could no longer claim surprise or prejudice. Indeed, two years passed between the time of the *Bartholomee* decision and Grossman's later hearing on summary judgment. Grossman could hardly claim

unfair surprise at that juncture, and ample opportunity had existed to develop the case further and rebut the evidence.

Similarly, in the case *sub judice,* the appellants attached affidavits to their Motion in Response to Summary Judgment. The affidavits signed by Terran's mother and grandmother, respectively, contained information which contradicted both the previously elicited interrogatory answers of Terran's mother and her deposition testimony. Based on those affidavits, which lengthened the child's period of residence at Lauretta Avenue to 5½ months, the appellants' expert, Dr. Howard M. Klein, then was able to render an opinion that the lead paint hazard at Lauretta Avenue was a substantially contributing factor to the minor's injury. The appellants now argue that their actions have generated a genuine question of material fact sufficient to prevent summary judgment from being granted.

In its Modified Pre–Trial Conference Order dated May 22, 1995, the trial court had ordered, *inter alia:*

2(a) All discovery, with the exception of that pertaining to experts and medical . . . records shall be completed no later than 12 months from the date of this order [*i.e.* May 22, 1996]. Any supplementation of discovery or continuation of deposition shall be concluded no later than the date set forth in 2(e) of this order.

. . .

(e) All depositions of experts shall be completed no later than March 18, 1998.

The original deposition was held on February 27, 1997. The appellees filed their Joint Motion for Summary Judgment on April 20, 1998. In opposition to that motion, the appellants provided the affidavits at issue, all signed on May 7, 1998, and filed in the Circuit Court for Baltimore City on May 8, 1998. A review of the record reveals that no extension of the discovery period was requested by either party. Consequently, there was no amended scheduling order issued by the court. Therefore, when the appellants attached the affidavits in opposition to the appellees' Joint Motion for Summary

Judgment on May 7, 1998, they had overshot by nearly two months the deadline for the completion of discovery. As a result, the hearing court properly excluded those affidavits as untimely filed.

The present case more closely resembles the facts in *Bartholomee* than those in *Casey*. Indeed, the appellants' introduction of these contradictory affidavits under the rules pertaining to summary judgment resulted in the very kind of unfair surprise that this Court proscribed in *Bartholomee*, 103 Md.App. at 50, 651 A.2d 908. Here, the minor's mother, Shari Hall, answered questions during her deposition related to her and Terran's period of residency at 1908 Lauretta Avenue. During the deposition, she had the ability to elaborate on her responses, and to answer appellees' questions under oath. Deposition testimony, which is provided in an adversarial setting, inherently carries an increased level of reliability over an affidavit. The prime guaranty of reliability in the case of depositions resides in the deponent having been subjected to cross-examination prior to trial. *Huffington v. State*, 304 Md. 559, 570, 500 A.2d 272 (1985), *cert. denied*, 478 U.S. 1023, 106 S.Ct. 3315, 92 L.Ed.2d 745 (1986). Subsequently, and only after the appellees had moved for summary judgment, the appellants came forth with affidavits containing averments which could be described only as the very antithesis of the previous deposition testimony.

While it is clear from Ms. Hall's testimony that she was not sure exactly which months she and her son lived at Lauretta Avenue,[4] it is equally clear from her testimony that they did not spend every day between 2 p.m. and 9–10 p.m. at that address, as she later stated in her affidavit. Likewise, Ms. Hall unequivocally stated during her deposition that Ms. Porter did not babysit Terran on a regular basis. Ms. Hall believed, based on her payment of rent twice, that she lived with Ms. Porter for two months. She further stated in her

---

4. Ms. Hall testified at various times during the same deposition that she and Terran resided at Lauretta Avenue for one month, two months, and for some period of time from before Christmas until just before Easter.

deposition that she visited Ms. Porter's residence "maybe like, probably like twice out of a week or something like that." Later in her deposition, Ms. Hall said that she visited three or four times per week, or that she went to Ms. Porter's any time the latter had "something to drink," and that she would stay there "like two hours, three hours, maybe an hour." In Ms. Hall's affidavit, on the other hand, she states that Ms. Porter did babysit occasionally, and that she and Terran spent approximately eight hours per day, every day, at 1908 Lauretta Avenue. The visitation continued from approximately December 1992 until a date in 1994 when Ms. Porter moved from the premises.

Relying on the transcendental principle that it is impossible that contradictories be simultaneously true, Ms. Hall's statements in her deposition and later affidavit are mutually exclusive. No explanation whatsoever for these contradictions has been provided by the appellants in this case. The amount of time the appellants spent at Lauretta Avenue on a daily basis is not a fact that lends itself to various interpretations.

Our decision in *Casey* follows longstanding Maryland precedent on the issue of credibility at the summary judgment stage of the proceedings. It should not be construed as to allow parties to raise a factual issue by submitting affidavits under Md. Rule 2–501(b) that contain unexplained facts directly contrary to earlier discovery responses, and thus, by so doing, subvert a trial court's scheduling orders.

The federal courts have long held that a party may not defeat summary judgment by offering an affidavit which contradicts unambiguous testimony previously elicited during a deposition. *See generally, Darnell v. Target Stores,* 16 F.3d 174, 176–77 (7th Cir.1994); *Barwick v. Celotex Corp.,* 736 F.2d 946, 959–60 (4th Cir.1984); *Van T. Junkins & Assoc., Inc. v. U.S. Indust., Inc.,* 736 F.2d 656, 657–59 (11 Cir.1984) discussing Fed.R.Civ.P. 56. This is precisely the situation that appellants have presented in this case.[5]

---

**5.** *See Wright v. Johns Hopkins Health Systems Corporation, et al.,* 353 Md. 568 n. 12, 728 A.2d 166:

In *Casey,* we permitted prior trial testimony, which had been attacked on the basis of timeliness in a previously reported opinion, to be considered by the trial court on remand years later of the same case. Here, however, we are asked to allow prior testimony elicited during a deposition to be decimated by the stroke of a pen in a subsequent affidavit. We decline to make that leap. We will be guided by the federal court holdings. In *Metropolitan Mtg. Fd. v. Basiliko,* 288 Md. 25, 27, 415 A.2d 582 (1980), the Court of Appeals stated that this State's summary judgment procedure was adopted from a similar federal rule. "Consequently, interpretations of Fed.R.Civ.P. 56 are very persuasive as to the meaning of Md. Rule 610 [the predecessor rule to Md. Rule 2–501]." *See also Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 738 n. 8, 625 A.2d 1005 (1993).

We affirm the hearing court's decision to strike the affidavits. They were untimely filed. Although appellants maintain that the affidavits were not produced as part of discovery, the information provided in the affidavits was precisely the information sought during discovery. The appellant's mother did not lack access to the information regarding the dates in which she and Terran resided and visited the residence at Lauretta Avenue. Indeed, Ms. Hall would be charged with actual knowledge of this information.[6] If Ms. Hall had erroneously stated the periods of residence, visits, and baby-sitting in her

---

The defendants object to portions of the "evidence on which plaintiffs rely." These objections are based, *inter alia,* on the Dead Man's Statute, Md.Code (1974, 1998 Repl.Vol.) CJ § 9–116, and on *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4 th Cir.1984) *and other cases holding that summary judgment against a party is not defeated by a conflict between that party's deposition testimony and that party's later affidavit opposing summary judgment. By presenting the portions of the record relied on by the plaintiffs, we intimate no opinion on the merits of the defendants' objections.*
(Emphasis supplied.)

**6.** *Blacks Law Dictionary,* 873 (6th ed.1990), defines "actual knowledge" as knowledge that "embraces those things of which the one sought to be charged has express information and those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed."

deposition, she had ample opportunity to amend her answers, to clarify these dates, and to provide this information to appellees.

## II

### Summary Judgment

The appellants also contend that the hearing court erred in granting summary judgment in favor of appellees. The standard of appellate review of a trial court's grant of a motion for summary judgment is whether the trial court was "legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990). When making a determination on summary judgment, a trial court makes no findings of fact. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). Rather, the court decides whether a genuine issue of material fact exists to prevent the entry of summary judgment. *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993); *see also Bond v. NIBCO, Inc.,* 96 Md.App. 127, 135, 623 A.2d 731 (1993); Md. Rule 2–501(e). Under this standard, therefore, we review the trial court's ruling as a matter of law. *Beatty,* 330 Md. at 737, 625 A.2d 1005.

Our cases recognize that a grant of summary judgment is appropriate only when the movant for summary judgment clearly demonstrates the absence of any genuine issue of material fact, and demonstrates that it is entitled to judgment as a matter of law. *Castiglione v. Johns Hopkins Hosp.,* 69 Md.App. 325, 332, 517 A.2d 786 (1986). To satisfy this test, the moving party must present the material facts necessary to obtain judgment and demonstrate that there is no dispute as to any of those facts. *Bond,* 96 Md.App. at 136, 623 A.2d 731. A material fact is one that will "somehow affect the outcome of the case." *King,* 303 Md. at 111, 492 A.2d 608. It is the burden of the movant to "identify the portions of the record that 'demonstrate the absence of a genuine issue of material fact.'" *Bond,* 96 Md.App. at 136, 623 A.2d 731 (*quoting*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant makes this showing, the burden shifts to the non-moving party to identify "with particularity the material facts that are disputed." Md. Rule 2–501(b). Neither general allegations of facts in dispute nor a mere scintilla of evidence will suffice to support the non-movant's position, *Lynx, Inc. v. Ordnance Prods., Inc.,* 273 Md. 1, 7–8, 327 A.2d 502 (1974); *Seaboard Surety Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 243–45, 603 A.2d 1357 (1992); there must be evidence upon which the jury could reasonably find for the non-moving party. *Beatty,* 330 Md. at 738, 625 A.2d 1005 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact") (emphasis in original)).

In ruling on a motion for summary judgment, the court must consider the motion and response submitted by the parties in a light most favorable to the non-moving party. *King,* 303 Md. at 110–11, 492 A.2d 608. Thus, summary judgment is inappropriate when the evidence is susceptible to more than one inference. *Coffey v. Derby Steel Company, Inc.,* 291 Md. 241, 434 A.2d 564 (1981).

With these principles in mind, we turn to the facts of the case *sub judice* to consider the trial court's grant of summary judgment. By their own admission, appellants could not preclude the entry of summary judgment without the affidavits tending to prove the amount of time Terran resided at 1908 Lauretta Avenue. Without the affidavits provided by the minor appellant's mother and grandmother, Dr. Klein could not render an opinion on the necessary element of "substantial causation," or equivalent language. In order to sustain a cause of action for negligence, the appellants had to prove three essential elements: (1) that the appellees were under a duty to protect Terran from injury; (2) that appellees

breached that duty; and (3) that Terran suffered actual injury or loss that was substantially caused by appellees' breach of the duty. *Richwind v. Brunson,* 335 Md. 661, 670, 645 A.2d 1147 (1994); *Bartholomee,* 103 Md.App. at 56–57, 651 A.2d 908.

Accordingly, we hold in this case that, without the necessary proof of causation, the trial court did not err in granting summary judgment in appellees' favor.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANTS.**