752 A.2d 681

**NORWEST BANK MINNESOTA, N.A., Trustee, et al.**

v.

**June PENCE.**

**No. 751, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

June 2, 2000.

Joseph B. Espo (Brown, Goldstein & Levy, LLP, on the brief), Baltimore, for appellants.

David Walsh-Little (Arlene J.M. Grant, on the brief), Baltimore, for appellee.

Argued before WENNER, HOLLANDER and SONNER, JJ.

WENNER, Judge.

Appellants, Norwest Bank Minnesota, N.A., Trustee (Norwest Bank) and Access Financial Services (Access) appeal from summary judgment granted by the Circuit Court for Baltimore City in favor of appellee, June Pence (Ms. Pence). On appeal, we are presented with the following questions, which we slightly rephrased for clarity:

I.  Did the trial court err when it found that the Baltimore City Deferred Loan was a lien of prior encumbrance that triggered the restrictions of the Maryland Secondary Mortgage Loan Act?

II.  Did the trial court err when it held that the borrower's claims were not preempted by federal law?

III.  Did the trial court err when it stripped real estate taxes and other non-interest charges from the loan?

IV.  Did the trial court err when it permitted the borrower to repay the stripped loan over 30 years instead of the schedule contained in the loan's note?

We shall answer appellants' first question in the affirmative, and reverse the judgment of the circuit court. Consequently, we need not consider appellants' remaining questions.

### Facts

Ms. Pence resides at 1231 Anglesea Street, Baltimore, Maryland, the core of the dispute presently before us.

In October of 1984, Ms. Pence entered into a loan agreement with the Mayor and City Council of Baltimore (the City) for a loan of $6265.00 (the City loan). The City loan was titled as a "mortgage," and on 21 December 1984, was recorded among the land records for Baltimore City. The City made such loans to qualified homeowners as part of the City's

program to rehabilitate its housing. Under the loan's terms, Ms. Pence agreed to subject her property to a rehabilitation easement and to the claims of the City. In addition, Ms. Pence was required to repay the City loan, together with interest at 3 per cent per annum, only if Ms. Pence transferred, sold, assigned, or abandoned the property, or if Ms. Pence ceased to own it because of death, condemnation, operation of law or otherwise. The City loan also contained a provision that would enable Ms. Pence's heirs to assume the loan upon meeting certain conditions.

Sometime in October of 1991, Ms. Pence and her daughter obtained a loan of $30,002.55 from Banker's First Mortgage, secured by a mortgage on 1231 Anglesea Street (The Banker's First Mortgage). The loan was brokered by Maryland Financial Resources, Inc. (MFR), and was subsequently assigned to Commercial Credit.

In September of 1994, MFR persuaded Ms. Pence and her daughter to refinance the Banker's First Mortgage with a $38,500.00 loan from First Savings Bank FSB, secured by a mortgage on 1231 Anglesea Street (the FSB mortgage). This loan was originated by MFR, and at settlement, MFR charged Ms. Pence and her daughter a $1540 loan origination fee and a $700 loan discount.[1]

Ms. Pence made monthly payments until September of 1996, when she ceased making payments. Ms. Pence apparently had become disabled in August of 1996 and was no longer employed. Although she eventually received disability benefits, she was still unable to meet her monthly mortgage payment. Consequently, Ms. Pence was warned that the FSB mortgage would be foreclosed if her payments were not made current. Ms. Pence subsequently filed a complaint in the

---

1. The FSB mortgage ultimately became a part of a package of "securitized" [sic] loans that were owned and serviced by Access. Norwest Bank was the trustee for the securities that were backed by the packaged "securitized" [sic] loans. The FSB mortgage is presently being serviced by Ocwen Financial, F.S.B. Access no longer has any interest in the loan.

Circuit Court for Baltimore City, claiming the FSB mortgage violated Md.Code (1975, 1990 Repl.Vol., 1999 Cum.Supp.) §§ 12–401—12–415 of the Com. Law II Article (CL), the Maryland Secondary Mortgage Loan Law (SMLL).

In January of 1998, appellants responded with a motion to dismiss or for summary judgment. After considering oral argument, the motion was denied, and the City loan was declared to be a lien of prior encumbrance. In July of 1998, appellants again filed a motion for partial summary judgment, seeking to limit certain issues, and to dismiss Access as a defendant. The motion was denied without a hearing. In December of 1998, Ms. Pence filed a motion for partial summary judgment. The motion was granted, and final judgment was entered on 13 January 1999. Appellants' motion to alter or amend was denied, and this appeal followed.

### Standard of Review

"The standard of appellate review of a trial court's grant of a motion for summary judgment is whether the trial court was 'legally correct.'" *Pittman v. Atlantic Realty Co.*, 127 Md. App. 255, 269, 732 A.2d 912, *cert. granted*, 356 Md. 495, 740 A.2d 613 (1999); *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990). "In making our analysis, we do not accord deference to the trial court's legal conclusions." *Lopata v. Miller*, 122 Md.App. 76, 83, 712 A.2d 24, *cert. denied*, 351 Md. 286, 718 A.2d 234 (1998). "[A] grant of summary judgment is appropriate only when the movant for summary judgment clearly demonstrates the absence of any genuine issue of material fact, and demonstrates that it is entitled to judgment as a matter of law." *Pittman* at 269, 732 A.2d 912. "In ruling on a motion for summary judgment, the court must consider the motion and response submitted by the parties in a light most favorable to the non-moving party." *Id.* at 270, 732 A.2d 912.

"It is ... clear that under Maryland's summary judgment rule a trial court determines issues of law; it makes rulings as a matter of law, resolving no disputed issues of fact." *Beatty*

v. *Trailmaster Products, Inc.*, 330 Md. 726, 737, 625 A.2d 1005
(1993).

Trial courts must be mindful that, "[e]ven where the under-
lying facts are undisputed, if the undisputed facts are suscepti-
ble of more than one permissible factual inference, the choice
between those inferences should not be made as a matter of
law, and summary judgment should not be granted." *Heat &
Power Corp.* at 591, 578 A.2d 1202. "[W]hen the moving party
has set forth sufficient grounds for summary judgment, the
opposing party must show with some precision that there is a
genuine dispute as to a material fact." *King v. Bankerd,* 303
Md. 98, 112, 492 A.2d 608 (1985). "A material fact is a fact the
resolution of which will somehow affect the outcome of the
case." *Id.* at 111, 492 A.2d 608. The party opposing the
motion bears the burden of showing that material facts are in
dispute. *Beatty* at 737, 625 A.2d 1005. "[T]he mere existence
of a scintilla of evidence in support of the [opposing party's]
claim is insufficient to preclude the grant of summary judg-
ment; there must be evidence upon which the jury could
reasonably find for the [opposing party]." *Id.* at 738–39, 625
A.2d 1005.

As we believe the facts before us are undisputed, our task is
to determine whether the trial court was legally correct in
granting Ms. Pence's motion for summary judgment.

## Discussion

■  Appellants contend the trial court erred in determining
that the City loan was a lien of prior encumbrance, thus
subjecting the FSB mortgage to the SMLL.

Under the SMLL, a loan secured by a mortgage becomes a
"secondary mortgage loan", subject to the provisions of the
SMLL, only if the property securing the loan "[i]s subject to
the lien of one or more prior encumbrances." [2]  As the Court

---

**2.** The SMLL defines a secondary mortgage loan as:
  CL § 12–401.  Definitions.
  (i) *Secondary mortgage loan.*—(1)  "Secondary mortgage loan"
  means a loan or deferred purchase price secured in whole or in part

of Appeals noted in *Chevy Chase Bank, FSB v. Chaires*, 350 Md. 716, 724 n. 3, 715 A.2d 199 (1998), a lien is defined by the SMLL only by way of inclusion.[3]  Consequently, we must determine whether the trial court was legally correct in concluding that the City loan was a lien of prior encumbrance. As we shall explain, we believe that it was not.

Ms. Pence asserts a number of grounds for her claim that the City loan constitutes a lien.  She first contends the City loan is a mortgage because it is titled as a mortgage, and is recorded among the land records of Baltimore City as a mortgage.  We disagree.  Although the City loan is recorded among the land records of Baltimore City as a "Mortgage from June Lila Pence," it is clear that it is not a mortgage. The loan simply does not meet the definition of a mortgage. A loan is secured by a mortgage when:

> the property is conveyed or assigned by the mortgagor to the mortgagee, in form like that of an absolute legal conveyance, but subject to a proviso or condition by which the conveyance is to become void, or the estate is to be reconveyed, upon payment to the mortgagee of the principal sum secured, with interest, on a day certain; and upon nonperformance of this condition, the mortgagee's conditional estate becomes absolute at law, and he may take possession thereof, but it remains redeemable in equity during a cer-

---

by a mortgage, deed of trust, security agreement, or other lien on real property located in the State, which property:
    (i) Is subject to the lien of one or more prior encumbrances, except a ground rent or other leasehold interest; and
    (ii) Has a dwelling on it designed principally as a residence with accommodations for not more than four families.

**3.**  The SMLL defines a lien as follows:
    CL § 12–401.  Definitions.
    (d) *Lien on real property.*—"Lien on real property" includes:
        (1) A confessed judgment note or consent judgment required by a person who ordinarily requires such an instrument for the purpose of acquiring a lien on property described in subsection (i) of this section; and
        (2) A sale and leaseback required by a person for that purpose.

tain period under the rules imposed by Courts of Equity, or by statute.

*Equitable Trust Co. v. Imbesi,* 287 Md. 249, 253–54, 412 A.2d 96 (1980)(quoting *Bank of Commerce v. Lanahan,* 45 Md. 396 (1876)). Here, as Ms. Pence neither conveyed nor assigned her property to the City, the City possessed no conditional estate that would become absolute at law, and upon default, permitted the City to take possession of the property in order to satisfy Ms. Pence's obligation to the City. Furthermore, the City loan lacks a day certain on which it is to become due; instead, the City loan would become due only upon the sale or transfer of the property. Accordingly, despite Ms. Pence's attempts to characterize it as such, we conclude that the City loan does not constitute a mortgage.

Ms. Pence also contends that, even if the City loan is not a formal mortgage, it is at least an equitable mortgage. The Court of Appeals has characterized an equitable mortgage as arising when

> a party makes a mortgage, or affects to make one, but it proves to be defective, by reason of some informality or omission, such as failure to record in due time, defective acknowledgment, or the like, though even by the omission of the mortgagee himself, as the instrument is at least evidence of an agreement to convey, the conscience of the mortgagor is bound, and it will be enforced by a court of equity.

*Imbesi,* 287 Md. at 254, 412 A.2d 96 (quoting *LeBrun v. Prosise,* 197 Md. 466, 477, 79 A.2d 543 (1951))(in turn quoting *Dyson v. Simmons,* 48 Md. 207, 214 (1878)). To the contrary, Ms. Pence's equitable mortgage claim fails for precisely the same reason as did her claim that the City loan constitutes a mortgage. As we have said, the City loan contains no agreement by Ms. Pence to convey her property to the City as security for the loan.

Next, Ms. Pence claims the City loan at least creates an equitable lien. Equitable liens have been held to arise in Maryland "under circumstances other than . . . some defect in

a mortgage or deed of trust." *Imbesi* at 255–56, 412 A.2d 96. The Court of Appeals has said:

> An equitable lien is based on specific enforcement of a contract to assign property as security. The contract need not stipulate for the lien in express terms; it is enough if that is the fair and reasonable implication of the terms employed. A mere promise to pay a debt or obligation does not of itself, however, create a lien unless the intention to create it is apparent from the instrument and circumstances leading to it.

*Keyworth v. Israelson,* 240 Md. 289, 305, 214 A.2d 168 (1965). According to Ms. Pence, she and the City intended that Ms. Pence would assign her property to the City as security for the City loan, and directs our attention to the following provision from the loan agreement:

> Whereas, the Owner is willing to subject the Property to a rehabilitative easement and to the claim of the City for the repayment of the Loan pursuant to the terms and conditions set forth in this Agreement. . . .

(Emphasis added.) As Ms. Pence sees it, the highlighted language creates at least an equitable lien and therefore a "lien of prior encumbrance." Again, we do not agree.

To be sure, we recognize that it is not necessary for the agreement to contain the word "lien" in order to create an equitable lien. "The modern conception of a lien is that it is a right given by contract, statute or rule of law to have a debt or charge satisfied out of a particular property." *Chaires,* 350 Md. at 731, 715 A.2d 199 (quoting 3 Am. Law of Property § 1320, at 537 n. 4 (A.J. Casner ed.1952)). We are not convinced, however, that the parties intended for 1231 Anglesea Street to serve as security for the City loan. In the first place, Ms. Pence did not convey the property to the City as security for repayment of the loan, nor does the agreement provide for a power of sale, authorizing the City to sell the property upon Ms. Pence's default. In fact, it is far from clear what the City's recourse would be if the City loan were ever in

default, or even if default could occur.[4]  In Ms. Pence's agreement with the City, the agreement provides that the City could "take whatever action at Law [sic] or in equity as may appear necessary or desirable to enforce any obligation, covenant or agreement of the Owner under this Agreement." Under this provision, we assume that the City could file an action against Ms. Pence personally to satisfy the debt.  "[I]t would appear that . . . for an equitable lien to exist a specific intent to create a lien must be made manifest. . . ." *Imbesi, supra* at 260, 412 A.2d 96.  This leads us to conclude that the City loan did not create a mortgage, nor did it create an equitable lien.  It is not manifest from the agreement that the parties intended for 1231 Anglesea Street to serve as security for the City loan.

■  Finally, Ms. Pence correctly asserts that her residence is encumbered by a rehabilitative easement.  As appellants point out, however, "there are many encumbrances, such as easements, that are not liens." *Manor Real Estate Co. v. Joseph M. Zamoiski Co.*, 251 Md. 120, 125, 246 A.2d 240 (1968).  The *Zamoiski* Court quoted with approval the comment of the trial judge that "a lien is always an encumbrance, but an encumbrance need not necessarily be a lien." *Id.* Thus, although Ms. Pence's residence is indeed encumbered by a rehabilitative easement, pursuant to the requirements of CL § 12–401(i)(i), in order for the FSB mortgage to be considered a secondary mortgage, 1231 Anglesea Street must be subject to a lien, not just an encumbrance, and a rehabilitative easement is not a lien.

Therefore, we conclude that the trial court erred in determining that the City loan constituted a lien of prior encumbrance.  Accordingly, the FSB mortgage is not subject to the provisions of the SMLL.

4.  As we have previously noted, the City loan became due and payable only if the property was transferred, sold, assigned, or abandoned, or if Ms. Pence ceased to own the property.  In addition, the City loan could be assumed by Ms. Pence's heirs if they met certain requirements. Thus, at least in theory, the City loan may never become due.

JUDGMENT REVERSED;  COSTS  TO  BE  PAID  BY
APPELLEE.